651 P.2d 527

**The STATE of Idaho,
Plaintiff-Respondent,**

v.

**Dale SHIDELER, Defendant-Appellant.**

**No. 13638.**

Supreme Court of Idaho.

Sept. 16, 1982.

Stewart A. Morris, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

Dale Shideler was charged by information with committing the offenses of armed robbery, assault with a deadly weapon, and possession of a firearm during the commission of a crime. The information was subsequently amended to include only the charge of armed robbery. I.C. § 18–6503. The defendant pleaded guilty to the charge of armed robbery, and was subsequently sentenced to the Idaho State Correctional Institution for an indeterminate term not to exceed twenty years. The defendant has appealed to this court, contending that the sentence imposed is excessive.

It is well established in this state that the primary responsibility for sentencing rests with the trial judge, and that its discretion in the matter will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *State v. Delin,* 102 Idaho 151, 627 P.2d 330 (1981); *State v. Dillon,* 100 Idaho 723, 604 P.2d 737

(1979). Nonetheless, as was recently observed in *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982), it is also true that "in exercising that discretion reasonableness is a fundamental requirement, *State v. Dillon,* 100 Idaho 723, 604 P.2d 737 (1979), and this court must examine the circumstances of each case to determine whether the punishment imposed is excessive. *State v. Weise,* 75 Idaho 404, 273 P.2d 97 (1954); *State v. French,* 95 Idaho 853, 522 P.2d 61 (1974) (Shepard, J., dissenting)." In this regard, the scope of review in cases where a sentence is alleged to be excessive in length requires that this court make an independent examination of the record, "having regard to the nature of the offense, the character of the offender and the protection of the public interest." *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). *See* ABA Standards Relating to Appellate Review of Sentences, at 7–8 (Approved Draft 1968).

With the foregoing in mind, we now turn to an examination of the facts of the instant case as disclosed by the record:

*Nature of the Offense and Protection of the Public Interest.* On December 29, 1978, the defendant and Gary States robbed the Idaho First National Bank, Statehouse Branch, in Boise, of approximately $22,-000.00. During the commission of the robbery the defendant exhibited a shotgun. The defendant and States left the scene of the robbery in States' van, with States driving the van and the defendant serving as a lookout. The defendant fired two shotgun blasts from the van in the direction of a pursuing pickup truck being driven by the husband of one of the bank employees. The man was not injured.

Without question, robbery is among the most serious of crimes, and the display of a firearm during the robbery and subsequent use of the firearm while fleeing clearly aggravates the serious nature of the defendant's offense. Although nobody was injured by the defendant's actions, we deem it appropriate to take into consideration the threatened harm of his conduct. In sum, the seriousness of the offense is inconsistent with a sanction other than a substantial sentence of imprisonment. Additionally, the protection of the public interest requires a substantial sentence of imprisonment in this case to reflect the community's condemnation of the defendant's behavior and to deter other members of society from engaging in similar conduct. *See State v. Stormoen,* 103 Idaho 83, 645 P.2d 317 (1982).

*Character of the offender.* At the time of the robbery, the defendant was thirty-two years old, twice divorced, and unemployed. He had no prior involvement in any criminal activity.

During the sentencing hearing held in this case, Shideler testified that he remembered being involved in the armed robbery, but could not recall having any motive for the crime. Shideler also testified that for at least a year prior to the robbery, and up to the time of the robbery, that he was in poor mental and physical health. His poor mental and physical health were said to have arisen from his abuse of medications prescribed to him for the treatment of juvenile diabetes and injuries arising from an automobile accident. At the time of the robbery, Shideler had open prescriptions for the following substances: Quaalude, Valium, Empirin 3's and 4's, Darvon, and Darvoset-N100. Shideler stated that as a result of his abuse of these prescription drugs he experienced mood swings and frequent memory blackouts as well as violent outbursts. During this period of time he also experienced marital problems with his second wife, eventually leading to a separation and divorce. His employment history up to the time of the robbery was erratic.

Approximately one year after his arrest, Shideler testified that over that period of time while free on bond the quality of his life had changed markedly. He stated that he had successfully recovered from his dependency on and abuse of prescription medications. And, although he believed he still had some emotional problems, Shideler stated that he no longer suffered from mood swings, memory losses or violent outbursts. Since his arrest, Shideler had been em-

ployed by Sterling Battery Company, and he testified that he enjoyed his work as a clerk and expressed a desire to move into a sales position with the company. Finally, Shideler expressed regret for what he had done, especially for the effect it had upon his family and friends, but also indicated that he was confident he could be a productive citizen in the future.

Shideler's brother, Larry Shideler, his father, Willie Shideler, his best friend, Dean Merrill, and his employer, Nick Sterling, all testified to the same effect. They all agreed that since Shideler's arrest he had a more realistic outlook on life, he was emotionally stable, he was gainfully employed and he had successfully recovered from his abuse of prescription medications. They all agreed further that Shideler was not a hardened criminal.

The presentence report served to fully corroborate the foregoing.

The overwhelming impression from this record is that except for this particular incident the defendant's character was good, and that since the incident and incarceration pending hearing, he has markedly changed his dependency on prescription medication, with great improvement in his mental attitude and stability. This was the defendant's first felony with no prior history of any criminal activity and this court has "recognized that the first offender should be accorded more lenient treatment than the habitual criminal." *State v. Owen,* 73 Idaho 394, 402, 253 P.2d 203, 207 (1953) (overruled on other grounds). Besides this being his first felony, the record discloses that the defendant has accepted responsibility for his acts, and that his family and employer have shown considerable interest in his future. We conclude that the defendant's character and the circumstances surrounding the case are compelling in nature, and sufficiently outweigh the gravity of the crime and the protection of the public interest to require us in the furtherance of justice to reduce the sentence of imprisonment from an indeterminate term not to exceed twenty years to an indeterminate term not to exceed twelve years. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). *See State v. Dunnagan,* 101 Idaho 125, 609 P.2d 657 (1980).

The term of imprisonment is modified from twenty years to twelve years and as modified, the judgment and sentence of imprisonment is affirmed.

BAKES, C. J., and BISTLINE, DONALDSON and SHEPARD, JJ., concur.

Submitted by McFADDEN, J., prior to his retirement on August 31, 1982.