809 P.2d 467

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John Wallace HOOPER,
Defendant–Appellant.**

**No. 18156.**

Supreme Court of Idaho,
Boise.

Feb. 12, 1991.

Rehearing Denied May 10, 1991.

Alan E. Trimming, Ada County Public Defender and Amil N. Myshin, Jr., Deputy Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen. and Michael Kane, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McDEVITT, Justice.

The defendant pled guilty to voluntary manslaughter, I.C. § 18–4006(1), and possession of a firearm during the commission of a crime, I.C. § 19–2520, for the killing of William "Bill" Davis. Hooper received a fixed 30 year sentence for these crimes and was incarcerated at the Idaho State Correctional Institution. Subsequently, the defendant moved the court for a reduction of his sentence based on his exemplary behavior and his continued aggravated health problems. This motion was denied by the trial court. From the sentence and the denial of the motion for reduction of sentence the defendant appeals. We affirm both the sentence and the denial of the motion for reduction of sentence.

Originally, Hooper was charged with first degree murder for the death of Davis, with whom Hooper shared a trailer house. The victim was "discovered" by Hooper who later requested that a friend call 911 emergency to advise authorities that some-

thing may be wrong with Davis. The police and fire department arrived and found Davis dead due to a gunshot wound in his right temple inflicted while he was sleeping on the couch in the trailer house. Several hours later police arrested Hooper for the murder of Davis. The murder weapon, a .22 caliber pistol, was found in Hooper's possession with an empty cartridge in the chamber. Although the defendant admitted to a neighbor that he shot Davis, he now claims he cannot remember if he shot Davis or not, as he was extremely intoxicated the night of the shooting and may have been suffering from an alcoholic "blackout." After the trial on the original charges had begun, the prosecution amended the charges against the defendant and the defendant pled guilty to voluntary manslaughter and possession of a firearm during the commission of a crime.

Hooper has a long history of alcohol abuse. Both of his biological parents were alcoholics who repeatedly placed him in and out of various foster homes and finally abandoned him while he was still young. Hooper was adopted when he was 15 years old by Mr. and Mrs. James W. Hooper of Nashville, Tennessee. Hooper's adoptive mother stated that the defendant started abusing alcohol early in his teenage years and has not been able to stop or control his alcohol problem.

In 1959, at the age of 19, the defendant left home and joined the Navy. He was given an honorable discharge for medical reasons in 1961. While in the Navy he incurred three summary court martials for errant behavior. His discharge summary stated that "Hooper's military behavior borders on completely unsatisfactory. He has little regard for military standards."

After being discharged from the Navy, Hooper returned to Nashville and was married in 1962. In 1968, apparently in a drunken rage, Hooper entered his wife's place of work and tried to shoot her with a rifle. His wife escaped with only a superficial wound. The day after this incident Hooper was arrested at the home of his mother-in-law for assault. For this conduct Hooper received 6 months in the Tennessee Central State Workhouse for the Criminally Insane.

After a divorce in 1972, the defendant moved to Michigan to live with his biological mother, Stella Chapman. In 1974, after an argument with his mother, Hooper retrieved a shotgun from his bedroom and fatally shot his mother in the head. This incident also apparently happened while the defendant was extremely intoxicated. For the death of his mother, Hooper received a sentence of 3½ to 15 years in prison. After serving 3 years, Hooper was released.

Hooper moved to Boise, Idaho, in 1984. In 1986 the defendant married for a second time. Hooper's alcoholism and abusiveness caused this marriage to end in divorce approximately 7 months after it began.

The defendant's criminal record is replete with arrests for drunkenness, drunk and disorderly conduct, assault, and forgery charges. Alcohol has played a significant role in all of these incidents. Hooper admits to entering alcohol rehabilitation programs six different times at the Veteran's Administration Hospital, but none of these programs has been successful.

Hooper now must take extensive medication for a heart ailment. These medications have many side effects, but the most profound is that it accentuates the effect of alcohol. Hooper now suffers from "blackouts," or oxygen deprivation of the brain, that causes the defendant to forget where he is or what he is doing. It is possible the defendant was suffering from one of these blackouts when he shot Davis.

We first review the sentence imposed by the trial court. A sentence of 15 years for voluntary manslaughter enhanced by 15 years for the use of a firearm is the maximum sentence allowed by statute. Sentencing is within the discretion of the trial court and will not be disturbed unless it appears that the sentence is an abuse of discretion. *State v. Cotton*, 100 Idaho 573, 602 P.2d 71 (1979). In exercising that discretion, the most fundamental requirement is reasonableness. *State v. Dillon*, 100 Idaho 723, 604 P.2d 737 (1979). Where an excessive sentence is alleged,

this Court must make an independent review of the record to determine reasonableness. *State v. Shideler*, 103 Idaho 593, 651 P.2d 527 (1982). In reviewing a sentence, we must give proper regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978).

█ *Nature of the offense.* Voluntary manslaughter is one of the most serious offenses that a person can commit; for this reason, our society has established stiff punishments for those who commit this crime.

*Character of the offender.* As we have previously stated, the defendant, Hooper, has had a long and extensive history of violating societal norms. The defendant has abused alcohol for over 30 years which has caused the failure of two marriages and the alienation of his family. The killing of Davis is at least the third time the defendant has used a firearm against another individual, twice resulting in death. This is indicative of the defendant's inability to function within the rules that society has mandated. His employment history has been erratic, he is physically abusive of other people, and he has never been able to accept discipline. The defendant has entered alcohol rehabilitation programs on six different occasions, all without success. This demonstrates his inability to be rehabilitated into a functional citizen.

█ *Protection of the public interest.* The seriousness of the offense mandates a punishment in the form of a substantial prison sentence. A substantial sentence reflects society's condemnation of the defendant's conduct, deters other members of society from engaging in similar conduct, and protects society from future crime. *State v. Stormoen*, 103 Idaho 83, 645 P.2d 317 (1982).

Upon reviewing the record, we cannot say the trial court abused its discretion. The sentence of 30 years imposed by the trial court for the crime committed is appropriate. We affirm the trial court's imposition of a determinate 30 year sentence upon the defendant.

Next, we review the denial of the defendant's motion for reduction of sentence. The defendant moved, pursuant to Idaho Criminal Rule 35, for a reduction of his sentence due to "exemplary behavior" and due to his "continued aggravated health problems."

█ A motion to reduce a legal sentence is within the discretion of the trial court. *State v. Arambula*, 97 Idaho 627, 550 P.2d 130 (1976); I.C.R. 35. The decision of the trial court will not be disturbed on appeal without a showing of an abuse of discretion.

> "It is well established that the sentence to be imposed in any particular matter is within the discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion appears. A sentence that is within the limits prescribed by statute ordinarily will not be considered an abuse of discretion." *State v. Seifart*, 100 Idaho 321, 322, 597 P.2d 44, 45 (1979). "Where a sentence is within the statutory limits, an appellant has the burden of showing a clear abuse of discretion on the part of the court imposing the sentence." *State v. Chapa*, 98 Idaho 54, 558 P.2d 83 (1976). This sentence was within the statutory limits.

*State v. Cotton*, 100 Idaho 573, 577–78, 602 P.2d 71, 75–76 (1979). *See also State v. Delin*, 102 Idaho 151, 627 P.2d 330 (1981).

Upon viewing the record, we see no abuse of discretion. The denial of the defendant's motion for reduction of sentence is affirmed.

BAKES, C.J., and JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, dissenting:

Justice McDevitt's opinion recites the history of John Hooper, beginning with his abandonment by his parents at a young age, placed by some unknown and unnamed person in various foster homes until at the age of fifteen years he was adopted by the Hoopers. He became addicted to alcohol as a teenager, and for medical reasons (probably alcoholic addiction) was dis-

charged from the Navy at the age of twenty or twenty-one. Thereafter he married, and later attempted to shoot his wife; he was sentenced to a workhouse for the criminally insane for three and one-half to fifteen years, and served three. He married again, but that marriage lasted only a few months. Hooper, at his own volition, sought alcoholic rehabilitation six different times, none of which were successful. He is now taking extensive medication for a heart ailment. He pleaded guilty to manslaughter in having killed Bill Davis with a pistol, and was sent to prison for a fixed thirty year term; he is now serving that term.

John Hooper's life story is a tale of tragedy. Is his fixed thirty year sentence imposed solely because of the final criminal act of manslaughter or is it because of past actions for which he has paid the penalty? And is the sentence which was imposed, even though it was within the limits of the law, unnecessarily severe for this particular person with his particular sociological background? Does Idaho society as a whole gain satisfaction in knowing that this now fifty-year-old man will in all likelihood be housed, fed, clothed, and medicated at taxpayer's expense until he is eighty years old? Were not other lesser sentences available which would have considered, for example, that after ten, twelve, or fifteen years of confinement, he is found no longer addicted to alcohol, and found to be rehabilitated to the extent that he can again be part of society? Is it reasonable to have Hooper locked up for a full thirty years, with the result that there can be no commutation of that sentence, and no chance of parole?

This appeal asks that this Court reduce the sentence—to something in line with reason. Our opinion says: "No, upon reviewing the record, we cannot say the trial court abused its discretion." But, we do not define for the reading public what is an abuse of discretion, other than inferentially, "In exercising discretion, the most fundamental requirement is reasonableness." 119 Idaho 606, 608, 809 P.2d 467, 469.

Hooper's fixed sentence in this case for me turns the clock backward to just shy of thirty years ago to another thirty year sentence awarded to a defendant whose crimes in the eyes of most reasonable persons was far more abhorrent and heinous than those attributable to John Hooper. That defendant, as with this defendant, had a "background of having lived with a cruel stepfather who eventually chased him away from his home at the age of eight years; he further presented background of living with various relatives who cared little for his moral and social development; he had only a first grade education; he was married at the age of seventeen years to a girl who was thirteen years of age, from whom he was divorced." *State v. Ledbetter*, 83 Idaho 451, 452–53, 364 P.2d 171, 172 (1961). The thirty year sentence to the penitentiary was appealed, the defendant urging that it was a severe abuse of discretion based on passion and prejudice. This Court did not declare that the sentence was an abuse of discretion, but did "conclude that the sentence is extreme, and, it is hereby reduced to a period of fifteen years." 83 Idaho at 453, 364 P.2d at 173. That was the unanimous decision of the Court, all of whom were personally known to me, and before whom I argued a number of times. All were well respected for their judicial ability and temperament, and, to my mind on a par with this Court's membership of today.

In conclusion, it is suggested that "abuse of discretion," which was in my recollection, a terminology not much, if ever, used in earlier days, is now greatly overworked, at least as concerns appellate courts passing judgment on the handicraft of lower courts. A trial judge makes a ruling, passes sentence, and I presently see no benefit in appellate court cliche usage of abuse of discretion, which is purely a generality, other than for Judge Burnett having added some specificity thereto, which he did in *Sheets v. Argo–West, Inc.*, 104 Idaho 880, 887, 664 P.2d 787, 794 (Ct.App.1983):

> 'Discretion' has been defined as a power or privilege to act unhampered by legal rule. Black's Law Dictionary, at 553 (rev. 4th ed. 1968). However, 'judicial discretion' is a more restrained concept. Lord Coke is said to have defined

**611**

judicial discretion as an inquiry into 'what would be just according to the laws in the premises.' *Id.* Judicial discretion 'requires an actual exercise of judgment and a consideration of the facts and circumstances which are necessary to make *a sound, fair, and just determination,* and a knowledge of the facts upon which the discretion may properly operate.' 27 C.J.S. *Discretion* at 289 (1959). Discretion which violates these restraints is discretion abused.

(Emphasis added.) Judge Burnett's definition of discretion is sound and equates evenly with Justice McDevitt's observation that the most fundamental element of discretion, and the exercise thereof, is reasonableness. The "standard" by which we should be guided is also found in the passage from Judge Burnett's opinion, namely, is the sentence imposed just? Does it comport with ideas and ideals of justice?

The incarceration of John Hooper for a thirty year *fixed* term is not a reasonable sentence, not reasonable as to him, and not reasonable as to Idaho taxpayers who will be paying his board, room, and medical bills for those 360 months.