882 P.2d 472

**STATE of Idaho, Plaintiff–Respondent,**

v.

**John BREEN, Defendant–Appellant.**

No. 20394.

Court of Appeals of Idaho.

Sept. 28, 1994.

Jonathan B. Hull, Kootenai County Public Defender, Coeur d'Alene, for appellant.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for respondent.

LANSING, Judge.

In this appeal we are asked to decide whether the district court erred in refusing to dismiss a robbery charge against John Breen due to the State's alleged non-compliance with time requirements of the Interstate Agreement on Detainers (I.A.D.). We

conclude that the I.A.D. was inapplicable to Breen. Accordingly, we affirm.

## I.

Before describing the facts and procedural history of this case, some explanation of the terms and purpose of the I.A.D. will be helpful. The Interstate Agreement on Detainers is an interstate compact authorized by Congress to provide a cooperative agreement between party states on detainers. *See* discussion in *Cuyler v. Adams*, 449 U.S. 433, 435–42, 101 S.Ct. 703, 705–08, 66 L.Ed.2d 641 (1981); I.C. § 19–5001(a). The I.A.D. establishes procedures for the transfer of a prisoner incarcerated in one state to temporary custody in a second state for disposition of charges pending there. It also provides that a prisoner against whom a detainer has been lodged due to charges pending in another jurisdiction may compel adjudication of those pending criminal charges by delivering a "request for a final disposition" to the jurisdiction that lodged the detainer. I.C. § 19–5001(c)(1) [1]. When such a request is properly presented, the defendant must be brought to trial on the pending charges within 180 days or, absent a showing of good cause for a continuance, the charges must be dismissed. *Id.*

The I.A.D.'s purpose is to address concerns that untried charges pending in other jurisdictions and difficulties in securing a speedy trial "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." I.C. § 19–5001(a). The I.A.D. is designed to ameliorate such disruption of rehabilitation efforts by encouraging the expeditious and orderly disposition of charges outstanding against a prisoner. *Id.*

## II.

With this statutory structure in mind, we consider the facts and procedural history of the present case. In March 1991, while on parole from imprisonment in Washington state, John Breen was arrested in Washington and charged with four counts of robbery. He was placed in the Spokane County jail as a pretrial detainee. Two days later, the prosecutor in Kootenai County, Idaho, filed a criminal complaint against Breen alleging that he had also robbed a convenience store in Post Falls, Idaho. In April 1991, the Washington Intermediate Sentence Review Board (WISRB) issued an order revoking Breen's parole. Despite the parole revocation, Breen was not returned to a Washington state correctional institution but remained in the Spokane County jail awaiting trial on the new Washington charges. On May 20, 1991, Breen was served with a governor's warrant authorizing his transport to the Idaho authorities.

In November 1991, Breen, while still in the Spokane County jail, filed with the district court in Kootenai County a pro se petition for final disposition by which he attempted to invoke provisions of the I.A.D. and requested adjudication of the Idaho charges. In January 1992, with the assistance of counsel, Breen again submitted a request for final disposition. A Kootenai County magistrate determined that Breen's requests did not satisfy the requirements of I.C. § 19–5001.

Meanwhile, in December 1991, Breen pleaded guilty to the Washington robbery

---

1. I.C. § 19–5001(c)(1) provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final dispo-

sition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

charges. He remained in the Spokane County jail however, awaiting sentencing. There apparently was considerable confusion among the state and county authorities in Washington concerning whether the state or Spokane County had custody of Breen. To alleviate this problem and clarify that Spokane County had sole custody, on June 3, 1992, the WISRB rescinded its order revoking Breen's parole.

After being sentenced in Washington on July 17, 1992, Breen was transported from the Spokane County jail to the Kootenai County jail pursuant to the outstanding Idaho warrant.

On July 31, 1992, Breen filed a motion to dismiss the Idaho charge, asserting that he had not been brought to trial within 180 days from delivery of his petitions for final disposition as required by the I.A.D., I.C. § 19–5001(c)(1). The district court denied the motion to dismiss on grounds that Breen was not entitled to invoke the protections of the I.A.D. The court reasoned that when Breen submitted his petitions for final disposition, he was being held in a county jail as a pretrial detainee and had not yet embarked upon imprisonment in a penal or correctional institution. The court concluded that Breen therefore was not subject to the provisions of I.C. § 19–5001(c)(1). Breen then entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to dismiss.

### III.

■ On appeal, Breen argues that the district court erred in concluding that he was not eligible to assert rights under the I.A.D. because he was incarcerated as a pretrial detainee in a county jail rather than in a penal institution. His appeal raises the question of statutory construction, a matter over which we exercise free review.[2]

■ As the district court observed, to be eligible to request final disposition of an outstanding indictment, information, or complaint, an individual must have "entered upon

a term of imprisonment in a penal or correctional institution," I.C. § 19–5001(c)(1). This provision appears to have been uniformly interpreted to mean that the I.A.D. is inapplicable to a person who is merely a pretrial detainee and is not yet serving a sentence. *See* Donald M. Zupanec, Annotation, *Validity, Construction and Application of Interstate Agreement on Detainers*, 98 A.L.R.3d 160, (1980 & Supp.1994). Here, Breen was in a county jail in Washington awaiting disposition of new robbery charges when he presented his requests for final disposition. However, Breen points out that he was also concurrently serving an existing sentence, due to the revocation of his parole from a prior conviction in Washington. He avers that because he was serving a sentence from his earlier felony conviction, he was eligible to request final disposition under the I.A.D. even though he was incarcerated in a county jail, not a state correctional institution.

The State responds that Breen's physical location in the county jail is determinative of the outcome of this case and requires affirmance of the district court's order because the I.A.D. applies only to persons actually incarcerated in a penal institution. We find the State's argument to be supported by both the express terms and underlying purpose of the I.A.D.

As noted above, Section 19–5001(c) addresses only prisoners who "have entered upon a term of imprisonment in a penal or correctional institution." The purpose of the I.A.D. is to eliminate uncertainties that interfere with and disrupt prisoners' rehabilitation and treatment programs—programs that are generally not afforded in jails. As stated in *State v. Wade*, 105 Nev. 206, 772 P.2d 1291, 1294 (1989):

> The very programs of prisoner treatment and rehabilitation whose obstruction the IAD was intended to prevent are not present in jails. Permitting prisoners sentenced to jails to invoke the IAD's Article III(a) provisions, therefore, would be meaningless. In effect, uncertainties which obstruct nonexistent programs

---

**2.** Although to be a party to the agreement a state must adopt I.A.D. by statute, the United States Supreme Court has held that the agreement's interpretation presents a question of federal law.

*Cuyler v. Adams*, 449 U.S. 433, 442, 101 S.Ct. 703, 708, 66 L.Ed.2d 641 (1981). Therefore, we give particular attention to federal court decisions interpreting the I.A.D.

would be eliminated. We conclude therefore that prisoners serving jail sentences cannot avail themselves of Article III(a)'s provisions.

We have found no authorities squarely addressing the situation presented here, where the offender is being held in a county jail following revocation of parole. However, several federal courts have determined that one incarcerated in a local jail or holding facility may not invoke provisions of the I.A.D. even though a sentence has already been imposed and the offender is serving a portion of that sentence while awaiting transfer to the assigned penal institution. *See, e.g., United States v. Taylor,* 861 F.2d 316, 320 (1st Cir.1988); *Crooker v. United States,* 814 F.2d 75, 77–78 (1st Cir.1987); *United States v. Wilson,* 719 F.2d 1491, 1494–95 (10th Cir.1983); *United States v. Roberts,* 548 F.2d 665, 670 (6th Cir.1977), *cert. denied* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246 (1977); *Lublin v. Johnson,* 628 F.Supp. 1496, 1499–1500 (E.D.N.Y.1986). Therefore, even though Breen was serving the sentence on his prior conviction, we conclude that he was ineligible to assert rights under the I.A.D. while incarcerated at the Spokane County jail because he was not imprisoned in a penal institution.

Breen argues that *United States v. Roy,* 771 F.2d 54 (2d Cir.1985), *cert. denied* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986), indicates that Breen was within the purview of the I.A.D. Like Breen, the defendant in *Roy* was both serving an existing sentence following revocation of his parole and awaiting adjudication of new charges from the same state when a detainer was lodged by another jurisdiction, the United States government. When Roy moved to dismiss the federal charges for violation of the I.A.D., the government argued that the I.A.D. was inapplicable to Roy because in addition to serving his prior state sentence, he was also awaiting trial on pending state charges. The court rejected the government's argument and held the I.A.D. to apply because, once Roy's parole was revoked, he was serving a state sentence. The *Roy* deci-

sion is readily distinguishable from the present case, however, for at all relevant times Roy was incarcerated at a state penal institution, not a local jail.[3] Therefore, the *Roy* decision is not inconsistent with our conclusion that the I.A.D. governs only when the defendant is serving a sentence in prison.

When Breen's parole was revoked, the Washington authorities elected not to transfer him to a state penitentiary but, rather, continued his incarceration at the Spokane County jail until he was sentenced on the new Washington charges and ultimately was transferred to the State of Idaho. Because Breen had not embarked upon a term of imprisonment in a penal or correctional institution, he was ineligible to assert rights under the I.A.D.

In view of our conclusion that the provisions of I.C. § 19–5001(c)(1) did not apply to Breen, we need not consider other arguments of the State challenging the sufficiency of Breen's requests for final disposition.

The district court's order denying the motion to dismiss is affirmed.

WALTERS, C.J., and PERRY, J., concur.

---

**3.** The Court of Appeals opinion, *Roy,* 771 F.2d at 55, refers readers to the chronology of events recounted by the district court in *United States v. Roy,* 597 F.Supp. 1210 (D.Conn.1984). The dis-

trict court's opinion reveals that Roy was being held at the Connecticut Correctional Institution at Somers. *Id.* at 1212–13.