[Cite as *In re Lamont*, 2013-Ohio-3199.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### ALLEN COUNTY

IN RE:                                CASE NO. 1-13-02

LAWRENCE FRANK LAMONT             O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. MISC. 2012 0436

**Judgment Affirmed**

Date of Decision: July 22, 2013

APPEARANCES:

    *F. Stephen Chamberlain* for Appellant

    *Terri L. Kohlrieser* for Appellee

**PRESTON, P.J.**

{¶1} Petitioner-appellant, Lawrence Frank Lamont, appeals the Allen County Court of Common Pleas' decision denying his petition for writ of habeas corpus challenging the State of Michigan's request for his temporary custody pursuant to the Interstate Agreement on Detainers (IAD), codified in Revised Code Chapter 2963. For the reasons that follow, we affirm.

{¶2} In 1972, Lamont and another prisoner, Patterson, escaped from an Ohio prison. (Dec. 13, 2012 Tr. at 9). Lamont and Patterson stole a vehicle and a firearm and drove to five different states kidnapping convenience store clerks, eventually murdering three of the clerks in Monroe County, Michigan. (*Id.* at 9-10). Lamont and Patterson were apprehended, and Lamont confessed to killing two of the three store clerks. (*Id.* at 10). Lamont eventually pled guilty to two federal counts of kidnapping and was sentenced to life on each count, which he served in the federal prison system. (*Id.* at 11).

{¶3} In April 2012, Lamont was released from federal prison on parole and was incarcerated at the Allen Oakwood Correctional Institution ("ACI") in Lima, Ohio to serve the prison time that remained on his sentence at the time of his escape from prison in 1972. (*Id.* at 11-12).

{¶4} On July 13, 2012, Michigan State Police Officer Marc Moore, stationed in Monroe County, discussed the 1972 murders with Lamont at the prison in Lima, Ohio. (*Id.* at 8, 12-13). Lamont advised Moore that he confessed

to the two 1972 Monroe County, Michigan murders but only because he wanted to get a federal sentence, not a state sentence. (*Id.* at 14). After that meeting, Moore returned to Michigan where the Monroe county prosecutor decided to prosecute Lamont for the three murders. (*Id.* at 15-16). Lamont was charged with three counts of homicide open murder and three counts of homicide felony murder in Michigan, and Michigan issued a warrant for Lamont's arrest and sought temporary custody of Lamont for prosecution. (*Id.* at 18, 21).

{¶5} On November 5, 2012, the State filed a motion for a hearing to advise Lamont of his rights under R.C. 2963.30-2963.35, Ohio's IAD. (Doc. No. 2).

{¶6} On November 7, 2012, the trial court held a detainer hearing advising Lamont of his rights under Ohio's IAD and appointing Lamont counsel. (Doc. Nos. 3-5).

{¶7} On November 16, 2012, Lamont filed a motion with the office of Ohio Governor John R. Kasich to disapprove Michigan's request for temporary custody pursuant to R.C. 2963.30. (Doc. No. 7). Lamont also filed a petition for writ of habeas corpus in the Allen County Court of Common Pleas that same day. (Doc. No. 6).

{¶8} On December 13, 2012, the trial court held a hearing on the petition. (Doc. No. 10). Thereafter, the parties filed written closing arguments. (Doc. Nos. 14-15). On January 2, 2013, the trial court denied the petition and granted Michigan's request for temporary custody. (Doc. No. 16).

{¶9} On January 14, 2013, Lamont filed a notice of appeal.  (Doc. No. 17).

Lamont raises one assignment of error for our review.

**Assignment of Error**

**The trial court below committed an error by failing to grant a Writ of Habeas Corpus where the documents requesting extradition were not in order on their face.**

{¶10} In his sole assignment of error, Lamont argues that the trial court

erred by denying his Writ of Habeas Corpus when the extradition documents were

not on their face in order.  In particular, Lamont argues that the State of Ohio did

not include three pages of the documents received from Michigan.  He also argues

that no complaint, fingerprints, or photographs were attached to Michigan's IAD

request (Form V) as required.  Lamont further contends that the introduction of

those documents at the hearing without prior notice to the defense—which

allegedly occurred herein—cannot cure this defect.

{¶11} The proceedings in this case were in accordance with the Interstate

Agreement on Detainers (IAD), which is codified in R.C. 2963.30 and provides, in

relevant part:

> (a) The appropriate officer of the jurisdiction in which an untried
>
> indictment, information or complaint is pending shall be entitled to
>
> have a prisoner against whom he has lodged a detainer and who is
>
> serving a term of imprisonment in any party state made available in
>
> accordance with Article V (a) hereof upon presentation of a written

request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner. R.C. 2963.30, Article IV(a).

{¶12} "Prisoners transferred pursuant to the provisions of the [IAD] are not required to forfeit any pre-existing rights they may have under state or federal law to challenge their transfer to the receiving State." *Cuyler v. Adams*, 449 U.S. 433, 450, 101 S.Ct. 703 (1981); *Long v. Shillinger*, 927 F.2d 525, 527 (10th Cir.1991). Among these rights is a pre-transfer hearing where the prisoner may contest the lawfulness of the transfer. *Cuyler*, 449 U.S. at 450; *Carpenter v. Jamerson*, 69 Ohio St.2d 308, 310-311 (1982). *See also State ex rel. Gilpin v. Stokes*, 19 Ohio App.3d 99 (1st Dist.1984) (petition for habeas corpus used to attack transfer request); *Everhardt v. Dahlberg*, 5th Dist. No. CA-2425 (Feb. 9, 1987) (same). The scope of the trial court's inquiry at this hearing is, however, limited to five considerations:

(1) whether the petitioner has been charged with an offense under the laws of the state demanding extradition; (2) whether the petitioner is the individual named in the extradition request; (3) whether the petitioner is a fugitive; (4) whether the extradition is not for the purpose of enforcing any civil liability; and (5) whether the extradition documents on their face are in order. *Carpenter* at 310-311, citing *Michigan v. Doran*, 439 U.S. 282, 289, 99 S.Ct. 530 (1978) and *In re Harris*, 170 Ohio St. 151 (1959).[1]

{¶13} Generally, an appellate court reviews a lower court's decision of whether to grant a petition for writ of habeas corpus for an abuse of discretion. *Thorpe v. Kerns*, 3d Dist. No. 1-08-31, 2008-Ohio-6578, ¶ 9. In the context of a habeas petition challenging an IAD transfer, other courts have, likewise, reviewed under an abuse of discretion standard, so we will use this standard as well. *In re Garcia*, 2009 PA Super 210, 984 A.2d 506, ¶ 15; *Brewer v. State*, 128 Idaho 340, 342, 913 P.2d 73 (1996). An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶14} The interpretation of the IAD is de novo. *State v. Braden*, 197 Ohio App.3d 534, 2011-Ohio-6691, ¶ 24 (11th Dist.), citing *State v. Anderson*, 189

---

[1] Although the *Doran* factors originated in a habeas action in the content of an extradition proceeding, they have been extended to habeas actions under the IAD as well. *Shillinger*, 927 F.2d at 527-528.; *Application of Morris*, 563 F.Supp. 1289, 1292 (W.D.N.C.1983). *See also Mitchell v. Chapleau*, 52 F.3d 326 (6th Cir.1995).

Ohio App.3d 697, 2010-Ohio-5068, ¶ 15 (12th Dist.). De novo review is independent, without deference to the lower court's ruling. *State v. Hudson*, 3d Dist. No. 9-12-38, 2013-Ohio-647, ¶ 27 (citations omitted).

{¶15} Lamont argues that the documents in this case were not in order since Michigan's Form V request for temporary custody stated that a copy of the complaint, fingerprint cards, and photographs were attached when, in fact, these documents were not attached. The plain language of Article IV(a) of the IAD does not require these documents; rather, it requires only that the request for temporary custody be written, and that the court having jurisdiction over the complaint (or other charging instrument) has approved, recorded, and transmitted the request. R.C. 2963.30. There is no question that Michigan's Form V met these requirements. *See People v. Waclawski*, 286 Mich.App.634, 651-652, 780 N.W.2d 321 (2009) (Form V is a detainer under Art. IV(a) of IAD).[2] Lamont reads the "in order" requirement (the fifth consideration) under *Michigan v. Doran* and its progeny to mean that all the documents listed on Michigan's Form V request are attached as represented on Form V itself. We, however, interpret the "in order" requirement to mean that the documents are sufficient to meet the requirements of the IAD and its statutory counterpart. *See Stokes*, 19 Ohio App.3d at 102 (the extradition documents on their face are in order because they comply

---

[2] From our research, it appears that Michigan has adopted a version, if not the exact version, of Form V from the Council of State Governments, Handbook on Interstate Crime Control (Rev.Ed.1966) 106, Fn. 1. *See Bonds v. Ohio Dept. of Rehab. and Corr.*, 116 Ohio App.3d 144, 152 (10th Dist.1996).

with R.C. 2963.03). *See also Ali v. State*, 11th Dist. Nos. 98-A-0077 and 98-A-0078, *6 (Mar. 31, 2000). As we have already stated, Michigan's Form V meets the requirements of a valid detainer under Article IV(a) of the IAD. *Waclawski* at 651-652.

{¶16} To interpret Article IV(a) to require the attachment of a copy of the complaint—which is not required by Article IV(a)'s plain language—is to incorporate this requirement from the Extradition Act, which, in relevant part, prohibits Ohio's governor from recognizing another state's extradition demand unless it is accompanied by "[a] copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, *or* by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon[.]" (Emphasis added.) R.C. 2963.03(A). Even assuming that the Extradition Act's (R.C. 2963.03(A)'s) required documentation is also required under Article IV(a) of the IAD by virtue of the U.S. Supreme Court's decision in *Cuyler v. Adams*, 449 U.S. 433—which specifically dealt with the incarcerated prisoner's right to a pre-transfer hearing and which has been extended to include the incarcerated prisoner's right to petition for writ of habeas corpus—Michigan's Form V attachments substantially complied with R.C. 2963.03(A) since a copy of the incident report along with a copy of the warrant was attached. (State's Ex. 1). See *Carpenter*, 69 Ohio St.2d at 315 (rejecting hyper-technical reading of extradition papers); *State v. Mourey*, 64 Ohio St.3d 482, 487 (1992)

-8-

(prisoner is required to only substantially comply with Article III of IAD). *See also Com. v. Quackenbush*, 291 Pa.Super. 209, 216, 435 A.2d 872 (1981) (substantial compliance with Uniform Extradition Act is sufficient); *Lewis v. Boone*, 418 So.2d 319, 320 (Fla.App.1982) (same).

{¶17} Additionally, if the requirements of the Extradition Act are incorporated into Article IV(a) of the IAD, then the same presumption of lawful custody that accompanies the governor's grant of extradition under the Extradition Act (R.C. 2963.07) should accompany the approval of the Article IV(a) request for temporary custody by a court having jurisdiction over the complaint. *In re Rowe*, 67 Ohio St.2d 115, 120 (1981), citing *Michigan v. Doran*, *supra*, and *South Carolina v. Bailey*, 289 U.S. 412, 53 S.Ct. 667 (1933). It is the petitioner's burden to rebut the presumption of lawful custody—here a lawful request for temporary custody—by proof beyond a reasonable doubt. *Rowe* at paragraph three of the syllabus; *Carpenter*, 69 Ohio St.2d at 314. Lamont has failed to demonstrate that Michigan's request for temporary custody was unlawful beyond a reasonable doubt. The documents attached to Michigan's Form V clearly indicate that a complaint was filed and pending in Monroe County, Michigan charging Lamont with three counts of open murder and three counts of felony murder. (State's Ex. 1). Furthermore, Marc Moore, the complaining officer, testified that charges were filed, and his reports indicate the case numbers assigned to the complaints. (Dec. 13, 2012 Tr. at 15-19); (State's Ex. 1). Aside from that, the arrest warrant issued

by a detached judicial officer represents that complaints were filed. (*Id.* at 29); (*Id.*). There was also no question that Lamont was the person that confessed to the 1972 murders since he admitted to the same when meeting with Moore on July 13, 2012. (Dec. 13, 2012 Tr. at 14-15). Prior to granting Michigan's request for temporary custody, the trial court also verified that the birthdate and social security number contained within Michigan's Form V request matched Lamont's birthdate and social security number. (Nov. 7, 2012 Tr. at 1-2). Additionally, Lamont's identity was further confirmed by the admission of photographs at the combined pre-transfer/habeas hearing. (State's Exs. 2-3).

{¶18} While Michigan's Form V could have been completed more accurately in this case, we must reject Lamont's hyper-technical reading of the form and find the Article IV(a) request for temporary custody valid here. *Carpenter*, 69 Ohio St.2d at 315; *Ali* at *6. The purpose of the IAD is to provide the mechanism for the expeditious disposition of outstanding charges filed in one member state, against a prisoner incarcerated in another member state. *State v. Koester*, 3d Dist. No. 16-03-07 and 16-03-08, 2003-Ohio-6098, ¶ 21, citing *State v. Godley*, 3d Dist. No. 13-91-31, *1 (Mar. 18, 1992). Our interpretation of Article IV(a)'s requirements—and not Lamont's interpretation—promotes this end.

{¶19} Consequently, we cannot conclude that the trial court abused its discretion by denying Lamont's petition for writ of habeas corpus.

**{¶20}** Lamont's assignment of error is, therefore, overruled.

**{¶21}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and SHAW, J.J., concur.**

**/hlo**